**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| J6ERS WERE TORTURED IN THE DC GULAG,<br><br>Petitioner,<br><br>v.<br><br>JESUS A. OSETE,<br><br>Respondent. | Case No. 1:26-CV-3013-CKK |

**RESPONDENT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 3

STANDARD OF REVIEW ........................................ 4

ARGUMENT ........................................ 5

I. THE PETITIONER FAILED TO ALLEGE FACTS TO SUPPORT AN ENTITLEMENT TO A WRIT OF MANDAMUS. ........................................ 5

II. THE PETITIONER LACKS ARTICLE III STANDING. ........................................ 8

A. The Petitioner Lacks Associational Standing. ........................................ 9

B. The Petitioner Lacks Organizational Standing Because the Petition Does Not Plausibly Allege Any Concrete and Particularized Injury to the Association Itself. ........................................ 11

III. THE DOJ'S ONGOING CIVIL RIGHTS INVESTIGATION OF THE D.C. JAIL MOOTS PETITIONER'S PRAYER FOR RELIEF. ........................................ 12

CONCLUSION ........................................ 14

## TABLE OF AUTHORITIES

### CASES

*Alvarez v. Smith*,
558 U.S. 87 (2009) .......... 12

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016) .......... 2

*Am. Whitewater v. Fed. Energy Regul. Comm'n*,
125 F.4th 1139 (D.C. Cir. 2025) .......... 7, 8

*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997) .......... 11, 12

*Ballance v. Peeples*,
Civ. A. No. 10-0864, 2010 WL 3069201 (D.D.C. Aug. 5, 2010) .......... 7

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986) .......... 8

*Chamber of Commerce v. EPA*,
642 F.3d 192 (D.C. Cir. 2011) .......... 9

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) .......... 5

*Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*,
709 F.2d 1521 (D.C. Cir. 1983) .......... 5

*DeFunis v. Odegaard*,
416 U.S. 312 (1974) .......... 12

*DuVall v. Postmaster Gen., U.S. Postal Serv.*,
585 F. Supp. 1374 (D.D.C. 1984), *aff'd*, 774 F.2d 510 (D.C. Cir. 1985) .......... 5

*Equal Rts. Ctr. v. Post Props., Inc.*,
633 F.3d 1136 (D.C. Cir. 2011) .......... 10

*Ex parte Fahey*,
332 U.S. 258 (1947) .......... 5

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 10, 11

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) .......... 11

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .................................................... 10, 11

*Heckler v. Chaney*,
470 U.S. 821 (1985) .................................................... 7

*Heckler v. Ringer*,
466 U.S. 602 (1984) .................................................... 5, 6

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .................................................... 8

*Illinois v. Ferriero*,
60 F.4th 704 (D.C. Cir. 2023) .................................................... 2, 5, 6

*In re Cheney*,
406 F.3d 723 (D.C. Cir. 2005) .................................................... 1, 6

*Jerome Stevens Pharms., Inc. v. FDA*,
402 F.3d 1249 (D.C. Cir. 2005) .................................................... 5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .................................................... 4

*Lavoi v. U.S. Dep't of Justice*,
679 F. Supp. 2d 12 (D.D.C. 2010) .................................................... 7

*Lovitky v. Trump*,
949 F.3d 753 (D.C. Cir. 2020) .................................................... 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................... 7, 10

*Meyer v. Grant*,
486 U.S. 414 (1988) .................................................... 12, 13

*Murphy v. Hunt*,
455 U.S. 478 (1982) .................................................... 12, 13

*Nat'l Taxpayers Union, Inc. v. United States*,
68 F.3d 1428 (D.C. Cir. 1995) .................................................... 11

*Oladokun v. U.S. Dep't of Justice*,
No. 25-5167, 2026 WL 765645 (D.C. Cir. Mar. 18, 2026) .................................................... 1, 7

*Powell v. Katzenbach*,
359 F.2d 234 (D.C. Cir. 1965) .................................................... 1

*Preiser v. Newkirk*,
422 U.S. 395 (1975) ........ 12

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*,
962 F.3d 576 (D.C. Cir. 2020) ........ 5

*Pub. Emps. for Env't Resp. v. Zeldin*,
174 F.4th 183 (D.C. Cir. 2026) ........ 8, 10

*Ranchers-Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
573 F. Supp. 3d 324 (D.D.C. 2021) ........ 5, 8

*Shoshone-Bannock Tribes v. Reno*,
56 F.3d 1476 (D.C. Cir. 1995) ........ 6

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26, (1976) ........ 10

*Sorenson Commc'ns, LLC v. FCC*,
897 F.3d 214 (D.C. Cir. 2018) ........ 9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 9

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ........ 10

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........ 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 8, 9

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) ........ 12

*Viasat, Inc. v. Fed. Commc'ns Comm'n*,
47 F.4th 769 (D.C. Cir. 2022) ........ 9

*Weinstein v. Bradford*,
423 U.S. 147 (1975) ........ 12, 13

**STATUTES**

28 U.S.C. § 1361 ........ 2, 3, 5, 6

**RULES**

Fed. R. Civ. P. 12 ........ 1, 4, 5

**REGULATIONS**

Proc. No. 10,887, 90 Fed. Reg. 8331 (Jan. 20, 2025) .......................................................... 3, 10, 13

**OTHER AUTHORITIES**

Letter from Harmeet K. Dhillon, Assistant Att'y Gen., Dep't of Justice, to Muriel E. Bowser, D.C. Mayor (Oct. 19, 2026), https://perma.cc/J8ZU-WZ6V ........................................................................................ 4, 12

## INTRODUCTION

The writ of mandamus cannot be used to control the Attorney General's discretionary law-enforcement decisions. *See Oladokun v. U.S. Dep't of Justice*, No. 25-5167, 2026 WL 765645, at *1 (D.C. Cir. Mar. 18, 2026) (per curiam) (affirming denial of a writ of mandamus seeking a Department of Justice ("DOJ") investigation and stating that "[t]he district court correctly concluded that a government agency's decision to initiate an investigation is a discretionary one, and appellant has not shown that mandamus is appropriate to compel such a decision."); *Powell v. Katzenbach*, 359 F.2d 234, 234–35 (D.C. Cir. 1965) (per curiam) (affirming dismissal of an action seeking to compel federal prosecution and explaining that "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General. Mandamus will not lie to control the exercise of this discretion."). The petitioner, a self-described unincorporated association of unnamed "January 6 defendants who were detained without trial at the D.C. Jail between January 2021 and January 2025," Pet. for Writ of Mandamus, ¶ 2, ECF No. 1 ("Pet."), nevertheless asks the court to disregard this well-settled principle. The petitioner invokes the "drastic" remedy of mandamus, which "is available only in extraordinary situations" and is "hardly ever granted," *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc), to compel the Assistant Attorney General of the DOJ's Civil Rights Division ("AAG") "to open a civil rights investigation . . . concerning the treatment of January 6 pretrial detainees at the D.C. Jail." Pet., Prayer for Relief (A). The petitioner further asks the court to order that the investigation be conducted on an expedited basis and that the AAG provide periodic reports on the status and findings of the investigation. *Id.* Prayer for Relief (B)–(C). The court should dismiss this petition under Federal Rule of Civil Procedure 12(b)(1) for the following reasons.

First, the petitioner failed to plausibly allege facts to support an entitlement to a writ of mandamus. The petitioner invokes 28 U.S.C. § 1361, which requires "1) a clear and indisputable right to the particular relief sought against the federal official, 2) that the federal official is violating a clear duty to act, and 3) that the plaintiff has no adequate alternative remedy." *Illinois v. Ferriero*, 60 F.4th 704, 713 (D.C. Cir. 2023). These "three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). The petitioner's asserted basis for seeking a writ of mandamus—Judge Lamberth's October 13, 2021, order—does not create a clear and indisputable duty that the AAG perform the acts requested. The petitioner is therefore not entitled to a writ of mandamus.

Second, the petitioner did not plausibly allege facts sufficient to confer Article III standing. The petitioner lacks standing under either an associational or an organizational theory. The asserted injuries are alleged violations of the civil rights of unnamed January 6 defendants who were held at the D.C. Jail between January 2021 and January 2025. Pet. ¶¶ 11–27. But the relief the petition requests, even if the court could order such relief (which it cannot), would not redress those alleged injuries. Associational standing, which evaluates whether the association's members have Article III standing, fails because an order from this court directing the AAG to open a civil rights investigation redresses nothing by itself. Organizational standing fails for a separate reason: the petition does not allege a distinct injury to the association itself.

Third, even if the petitioner were entitled to a writ of mandamus, and had established Article III standing at the time the petition was filed, the DOJ's ongoing investigation into whether the D.C. Jail engages in a pattern or practice of violating prisoners' and detainees' constitutional rights moots the petitioner's prayer for relief. The AAG announced on October 19,

2026, an investigation of the type and scope that the petition requests. *See* Pet., Prayer for Relief (A)–(C). The DOJ is now investigating the D.C. Jail for potential civil rights violations dating back to January 1, 2021—a temporal scope that includes all January 6 defendants. The petitioner's prayer for relief is therefore moot.

## BACKGROUND

In *United States v. Worrell*, Judge Lamberth found the Warden of the D.C. Jail, Wanda Patten, and Director of the D.C. Department of Corrections, Quincy Booth, in civil contempt of court. Order at 1, No. 1:21-cr-00292-RCL (D.D.C. Oct. 13, 2021), ECF No. 106 ("*Worrell* Order"); *see also Worrell*, Tr. of Show Cause Hearing (Oct. 13, 2021), ECF No. 108. In the same civil contempt order, Judge Lamberth ordered the clerk of the court "to transmit a copy of this order. . . to the Attorney General of the United States for appropriate inquiry into potential civil rights violations of January 6 defendants, as exemplified in this case." *Worrell* Order at 1.

On January 20, 2025, President Trump issued a proclamation commuting the sentences of some January 6 defendants to "time served" and granting a "full, complete and unconditional pardon" to all other January 6 defendants. Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021, Proc. No. 10,887, 90 Fed. Reg. 8331, 8331 (Jan. 20, 2025). In the same proclamation, President Trump ordered the immediate release of all January 6 defendants from prison. *Id.*

On August 28, 2026, the petitioner filed this action requesting a writ of mandamus under 28 U.S.C. § 1361 to compel the AAG to open an investigation, citing Judge Lamberth's October 13, 2021, order as the purported basis. Pet., Prayer for Relief (A). The petitioner, a self-described unincorporated association of unnamed "January 6 defendants who were detained without trial at the D.C. Jail between January 2021 and January 2025," Pet. ¶ 2, asserts that "[n]o [civil rights]

investigation has ever been opened" concerning their conditions of confinement. *Id.* ¶ 1. The petitioner alleges civil rights violations of January 6 defendants during their incarceration in the D.C. Jail, *see id.* ¶¶ 11–27, including "extended lockdowns, prolonged isolation in solitary confinement, denial of medical care, denial of religious services, and interference with access to counsel." *Id.* ¶ 13. The petitioner insists that "[t]he matter is urgent," *Id.* ¶ 32, and requests that this court order that the AAG's investigation "be commenced on an expedited basis," *Id.* Prayer for Relief (B), and that the AAG provide periodic status reports concerning the investigation. *Id.* Prayer for Relief (C).

On October 19, 2026, the AAG announced the commencement of a DOJ investigation "into the District of Columbia Department of Corrections ('DOC') facilities." Exhibit 1, Letter from Harmeet K. Dhillon, Assistant Att'y Gen., Dep't of Justice, to Muriel E. Bowser, D.C. Mayor, at 1 (Oct. 19, 2026), available at https://perma.cc/J8ZU-WZ6V ("DOJ Letter"). The investigation will "determine whether the District of Columbia . . . engages in a pattern or practice of violating the constitutional rights of inmates and detainees held at DOC facilities by failing to protect them from use of excessive force, failing to provide adequate medical care, failing to provide safe and sanitary physical conditions of confinement, and by failing to provide adequate nutrition." *Id.* The AAG noted that "[t]he scope of the investigation will examine conditions of confinement for all D.C. jail inmates since January 1, 2021." *Id.*

## **STANDARD OF REVIEW**

Rule 12(b)(1) motions challenge the court's subject-matter jurisdiction, which the petitioner bears the burden of establishing. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This motion presents a facial and factual challenge to the sufficiency of the petition's jurisdictional allegations. In a facial challenge, the court accepts well-pleaded factual

allegations as true and draws reasonable inferences in the petitioner's favor, while assessing whether those allegations plausibly demonstrate jurisdiction. *See Ranchers-Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 573 F. Supp. 3d 324, 332–33 (D.D.C. 2021). When a motion to dismiss is brought as a factual challenge, the court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

Standing is measured "when the suit was filed," *Davis v. FEC*, 554 U.S. 724, 734 (2008), while an actual controversy "must be extant at all stages of review, not merely at the time the complaint is filed," *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (cleaned up). Standing asks whether the plaintiff had the requisite stake when the complaint was filed; mootness asks whether that stake has since ended. When intervening events have mooted a case, dismissal under Rule 12(b)(1) is proper. *See DuVall v. Postmaster Gen., U.S. Postal Serv.*, 585 F. Supp. 1374, 1378 (D.D.C. 1984) (dismissing "suit as moot pursuant to Federal Rule of Civil Procedure 12(b)(1)"), *aff'd*, 774 F.2d 510 (D.C. Cir. 1985). In evaluating mootness, the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation omitted).

## ARGUMENT

### I. THE PETITIONER FAILED TO ALLEGE FACTS TO SUPPORT AN ENTITLEMENT TO A WRIT OF MANDAMUS.

The petitioner has not established mandamus jurisdiction under Section 1361 because the petitioner's asserted source of relief—Judge Lamberth's October 13, 2021, order—does not impose a clear and indisputable duty on the AAG to perform the requested acts.

Section 1361 authorizes an action to compel an "officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, but the writ of mandamus is a "drastic and extraordinary" remedy. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). It is "an option of last resort," *Ferriero*, 60 F.4th at 714 (quoting *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 582 (D.C. Cir. 2020)), available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."). Each requirement under Section 1361 is jurisdictional, which means that if the petitioner fails to plausibly allege any one of them, the court must dismiss for lack of statutory mandamus jurisdiction and need not decide the separate question of Article III standing. *See Ferriero*, 60 F.4th at 714.

"[M]andamus jurisdiction under § 1361 merges with the merits," so that the clear-right and clear-duty requirements may be analyzed "concurrently." *Lovitky v. Trump*, 949 F.3d 753, 759–60 (D.C. Cir. 2020) (quoting *In re Cheney*, 406 F.3d at 729). The court must examine the asserted source of the duty, not merely accept the petitioner's characterization of it as mandatory. *See id.* at 760 ("[I]n order to survive a motion to dismiss, Lovitky must have plausibly alleged that the Ethics Act, once interpreted, imposed a clear and indisputable duty on President Trump to differentiate personal from business liabilities."). The petitioner must show that the law

requires the particular action demanded. *See Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995).

Because the petitioner has not established that the AAG has a clear duty to act under Section 1361, the court should dismiss this petition. The petition invokes only one asserted source of duty: Judge Lamberth's October 13, 2021, order. That order calls for an "appropriate inquiry into potential civil rights violations of January 6 defendants, as exemplified in this case." *Worrell* Order at 1. The order does not impose upon the AAG a "clear nondiscretionary duty" to act under Section 1361. *Heckler*, 466 U.S. at 616. The order certainly does not require the particular action that the petitioner demands: a "systemic" investigation into potential civil rights violations of January 6 defendants. Pet. ¶ 31. Judge Lamberth's phrase "appropriate inquiry" gives the AAG discretion to determine the inquiry's nature, scope, and timeline. The AAG's exercise of that discretion is consistent with the longstanding principle that the Executive's decision whether to initiate an investigation cannot be controlled by the writ of mandamus. *See Oladokun*, 2026 WL 765645, at *1 (concluding that the "district court correctly concluded that a government agency's decision to initiate an investigation is a discretionary one, and appellant has not shown that mandamus is appropriate to compel such a decision"); *Lavoi v. U.S. Dep't of Justice*, 679 F. Supp. 2d 12, 14 (D.D.C. 2010) (dismissing a mandamus petition requesting "that the Court order the Department of Justice to initiate a broad investigation into [the plaintiff's] numerous claims of Hurricane Katrina-related fraud[,]" and stating that "[i]t is 'well settled,' however, that a writ of mandamus cannot be issued to compel discretionary acts like an executive agency's decision to initiate an investigation."); *Ballance v. Peeples*, Civ. A. No. 10-0864, 2010 WL 3069201, at *1 (D.D.C. Aug. 5, 2010) (dismissing a mandamus petition seeking to compel the Director and the Chief of the Criminal Investigative Division of the FBI "to

investigate the criminal conspiracy described in his complaint," and concluding that "Petitioner cannot compel a criminal investigation by any law enforcement agency by means of a writ of mandamus."); *see also Heckler v. Chaney*, 470 U.S. 821, 831–32, 838 (1985) (concluding that the government's decision whether to open an investigation or enforcement action is generally not subject to judicial review).

The writ of mandamus therefore fails on the first statutory jurisdictional requirement and should be dismissed on this basis alone. The Court need not consider whether the petitioner has also demonstrated Article III standing, but if the Court decides to reach that issue, the petitioner has failed to carry his burden on that as well.

## II. THE PETITIONER LACKS ARTICLE III STANDING.

Article III requires a concrete and particularized injury, fairly traceable to the challenged conduct, that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Am. Whitewater v. Fed. Energy Regul. Comm'n*, 125 F.4th 1139, 1150 (D.C. Cir. 2025). The petitioner bears the burden of demonstrating standing for each claim and form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). On this facial challenge to petitioner's standing, the court accepts well-pleaded facts and reasonable inferences in the petitioner's favor. *See Ranchers-Cattlemen*, 573 F. Supp. 3d at 332–33. Failure to establish standing means the court lacks subject-matter jurisdiction and the claim must be dismissed. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

An organization may sue for injuries to itself or, if it satisfies the requirements for associational standing, on behalf of its members. *See Pub. Emps. for Env't Resp. v. Zeldin*, 174 F.4th 183, 190–91 (D.C. Cir. 2026). The petitioner alleges injuries to its members, but neither

that theory nor a claim of injury to the association itself supports any form of relief that the petition demands.

### A. The Petitioner Lacks Associational Standing.

An association has "standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The petitioner failed to show that its members would have standing in their own right both because it does not allege sufficient information about its membership and because it does not connect the alleged injury to the relief requested.

The petitioner has not plausibly alleged that it is the kind of association that may invoke associational standing in the first place. *See, e.g.*, *Zeldin*, 174 F.4th at 191 (finding lack of associational standing when the organization did not explain whether its members "have the requisite roles, responsibilities, or influence over the organizations to alone satisfy the strictures of associational standing."). To "assert associational standing, an organization must have the 'indicia of a traditional membership association[,]'" *Viasat, Inc. v. Fed. Commc'ns Comm'n*, 47 F.4th 769, 781 (D.C. Cir. 2022) (quoting *Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214, 225 (D.C. Cir. 2018)), which "turns on considerations such as whether members finance the organization, guide its activities, or select its leadership." *Id.* The petition does not provide any details about the organization other than that it is an "unincorporated association of the January 6 defendants who were detained without trial at the D.C. Jail between January 2021 and January 2025[.]" Pet. ¶ 2. The petition does not say who its members are, how many there are, how they joined, or whether they finance, guide or lead it. *See Chamber of Commerce v. EPA*, 642 F.3d

192, 199 (D.C. Cir. 2011) ("When a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured. Rather the petitioner must specifically 'identify members who have suffered the requisite harm.'" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)).

The petitioner also failed to satisfy the redressability requirement for Article III standing. It was incumbent upon the petitioner to supply a factual basis for a connection between the alleged injuries and the requested investigation because the petitioner bears the burden of demonstrating standing. *TransUnion*, 594 U.S. at 431. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). The petition alleges injuries to the association's members—"the class of January 6 defendants for whom [Judge Lamberth's] Order was entered." Pet. ¶ 30. These injuries include "extended lockdowns, prolonged isolation in solitary confinement, denial of medical care, denial of religious services, and interference with access to counsel." *Id.* ¶ 13. But the petition does not explain how the requested "systemic civil rights investigation into the D.C. Department of Corrections" would redress those alleged injuries. *Id.* ¶ 31. *See Lujan*, 504 U.S. at 561 (stating that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42, (1976))).

Nor does the petitioner explain why the matter is "urgent," Pet. ¶ 32, such that the investigation must be conducted on an expedited basis with periodic status reports to this court regarding the investigation's progress. *Id.* Prayer for Relief (B)–(C). As the petition states, President Trump issued a proclamation that ordered the immediate release of all January 6 defendants from prison, including the D.C. Jail. Pet. ¶ 22; 90 Fed. Reg. at 8331. Even assuming

the association's members suffered the alleged injuries, none of those injuries is ongoing because none of the association's members is still detained in the D.C. Jail.

### B. The Petitioner Lacks Organizational Standing Because the Petition Does Not Plausibly Allege Any Concrete and Particularized Injury to the Association Itself.

The petitioner also fails to plausibly allege nonconclusory facts to establish Article III standing to support an organizational theory, which is when an organization "claim[s] that [they] suffered an injury in [their] own right." *Zeldin*, 174 F.4th at 190 (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023)); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) (stating that organizations have standing "to sue on their own behalf for injuries they have sustained" so long as they "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982))).

An organization suing on its own behalf must satisfy the ordinary requirements of injury, causation, and redressability. *See Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011). Its opposition to governmental conduct, however strong, does not establish an injury to the organization itself. *See All. for Hippocratic Med.*, 602 U.S. at 394 ("Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, . . . no matter how longstanding the interest and no matter how qualified the organization[.]" (citations omitted)). Organizational standing is not established "simply because" the organization "object[s] to [the government's] actions," and it "must show far more than simply a setback to the organization's abstract social interests." *Id.* (quoting *Havens*, 455 U.S. at 379); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) ("An organization must allege more than a frustration of its purpose because frustration of an organization's objectives 'is the type of abstract concern that

does not impart standing.'" (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995))).

The petitioner expresses strong disagreement with governmental policy concerning treatment of January 6 defendants held at the D.C. Jail. *See* Pet. ¶¶ 11–27. But disagreement with governmental policy does not establish organizational standing; that is the type of "strong opposition to the government's conduct" that is insufficient. *All. for Hippocratic Med.*, 602 U.S. at 394. The petitioner does not allege that the AAG has interfered with its own operations, services, property, or other interests distinct from those of its members. The petitioner therefore lacks organizational standing.

## III. THE DOJ'S ONGOING CIVIL RIGHTS INVESTIGATION OF THE D.C. JAIL MOOTS PETITIONER'S PRAYER FOR RELIEF.

Mootness doctrine, like standing, is grounded in Article III's case or controversy requirement. "Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). Mootness occurs when a previously justiciable dispute no longer presents adverse legal interests. *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974). A court may proceed to the merits despite the absence of an ongoing controversy, however, if the dispute is "capable of repetition, yet evading review." *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988). But this exception is narrow. It applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining

party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Even if the petitioner were entitled to a writ of mandamus and had established standing to seek it, the DOJ's ongoing civil rights investigation into the D.C. Jail moots this petition. *See* DOJ Letter at 1; *see also Jerome Stevens Pharms., Inc.*, 402 F.3d at 1253 (stating that the court may consider facts outside the complaint when assessing jurisdiction). The investigation's nature and scope are precisely what the petition demands. The investigation will "determine whether the District of Columbia . . . engages in a pattern or practice of violating the constitutional rights of inmates and detainees held at DOC facilities by failing to protect them from use of excessive force, failing to provide adequate medical care, failing to provide safe and sanitary physical conditions of confinement, and by failing to provide adequate nutrition." *Id.* These are the kinds of alleged civil rights violations that the petition describes at length. *See* Pet. ¶¶ 11–27. Moreover, "[t]he scope of the investigation will examine conditions of confinement for all D.C. jail inmates since January 1, 2021." DOJ Letter at 1. This temporal scope covers all the association's members. *See* Pet. ¶ 2. Finally, the petitioner failed to plausibly plead facts showing that its alleged injuries are "capable of repetition, yet evading review." *See Meyer*, 486 U.S. at 417 n.2. The petitioner did not plead facts giving rise to a "reasonable expectation that the same [January 6 defendants] would be subjected to the same action again." *Murphy*, 455 U.S. at 482 (quoting *Weinstein*, 423 U.S. at 149). To the contrary, President Trump's January 20, 2025, proclamation—commuting the sentences of some January 6 defendants to "time served," granting a "full, complete and unconditional pardon" to all other January 6 defendants, and ordering their immediate release from prison—compels a reasonable expectation that the

petitioner's members will *not* be subjected to the same alleged injuries again. 90 Fed. Reg. at 8331.

## CONCLUSION

For these reasons, the court should dismiss this petition under Rule 12(b)(1).

DATED: November 10, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General

*/s/ Andrew I. Warden*
ANDREW I. WARDEN (IN 23840-49)
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-5084
Email: andrew.warden@usdoj.gov

*Attorney for Respondent*